Filed 6/1/22  In re Juan A. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re JUAN A., a Person Coming Under the Juvenile Court Law. | B313287 (Los Angeles County Super. Ct. No. 20LJJP00589) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. J.A., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge Pro Tempore. Affirmed with directions.

Christine E. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

_____

In this dependency case (Welf. & Inst. Code, § 300 et seq.),[1] J.A. (Father) appeals from the juvenile court's disposition order. He contends we must reverse the disposition order because the court and the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the duty to inquire under section 224.2 whether his son, Juan A., is or may be an Indian child within the meaning of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; (ICWA)). For the reasons explained below, we conclude DCFS's failure to ask extended family members about potential Indian ancestry, as required under section 224.2, subdivision (b), was prejudicial. Therefore, we remand the matter with directions for the juvenile court to order DCFS to comply with section 224.2.

## BACKGROUND[2]

On September 7, 2020, DCFS received a referral alleging Father and Rosa L. (Mother),[3] the parents of then four-year-old

_____

[1] Further statutory references are to the Welfare and Institutions Code.

[2] We include here only the facts related to the issue on appeal: the juvenile court's and DCFS's compliance with California law implementing ICWA.

[3] Mother is not a party to this appeal.

Juan A., engaged in a violent altercation at a gathering at the home of Juan's maternal grandmother. During DCFS's investigation of the referral, a social worker spoke with Juan's maternal grandmother, maternal aunt, paternal grandmother, and Father's cousin. During her interview, the maternal aunt provided the social worker with the name of another maternal aunt. There is no indication in the record that the social worker asked any of these relatives whether Juan may be an Indian child. The record shows that Juan's maternal and paternal grandmothers communicated with one another regarding conflicts between Father and Mother.

On September 9, 2020, the social worker interviewed Mother, who reported Juan has no known Indian ancestry. At this point, DCFS was not yet in contact with Father.

On September 16, 2020, DCFS obtained a removal order for Juan (and his half sibling, who is not involved in this appeal). The same day, the social worker picked up Juan from his paternal grandmother's home and placed him with a resource family.

In the Detention Report, filed with the juvenile court on September 18, 2020, DCFS stated: "[ICWA] does not apply. [¶] On 09/09/2020, [the social worker] interviewed [M]other and asked about Indian Ancestry. Mother stated that her family does not have any Indian Ancestry. [¶] . . . [¶] [The social worker] could not interview [F]ather . . . as his whereabouts are unknown."

On September 18, 2020, DCFS filed a dependency petition under section 300, subdivisions (a) and (b), alleging Juan was at risk of serious physical harm, damage, and danger based on, among other things, a history of violent altercations between

Father and Mother (counts a-1 & b-1); Father's violent conduct (brandishing a gun) toward another guest at the September 7, 2020 family gathering (counts a-2 & b-4); Father's physical abuse of Juan (count a-3); and the detrimental and endangering situation created by Father and Mother in having guns in the family home where Juan and his half sibling could access them (count b-6).[4] Form ICWA-010(A), attached to the dependency petition, reflects that on September 9, 2020, during an in person contact, Mother reported to DCFS that Juan has no known Indian ancestry.

Mother appeared at a September 23, 2020 detention hearing; Father did not. Mother signed and submitted to the juvenile court form ICWA-020. Thereon, she checked the box indicating "I have no Indian ancestry as far as I know." The court noted the filing of Mother's form ICWA-020, and stated in its minute order from the detention hearing: "The Court does not have reason to know that ICWA applies as to Mother. The determination of ICWA status is deferred for [F]ather's appearance." The court found DCFS made a prima facie showing that Juan was a person described by section 300, and the court detained Juan from Mother and Father. Upon Mother's request, the court ordered DCFS to assess Juan's paternal grandmother for placement and granted DCFS discretion to place Juan with any appropriate relative or nonrelative extended family member.

On October 29, 2020, a DCFS dependency investigator spoke with Father and gave him notice of his November 4, 2020

---

[4] This summary includes only the allegations that were later sustained by the juvenile court at the March 10, 2021 adjudication hearing.

4

arraignment hearing. The juvenile court appointed counsel for Father at the arraignment hearing; Father was not present at the hearing. Father's counsel submitted a form ICWA-020 on Father's behalf, indicating none of the statements on the form regarding potential Indian status apply to Juan, based on representations Father made to his counsel over the phone. The court stated at the hearing: "Based on both parents['] forms with respect to [ICWA] the court has no reason to believe that this is an [ICWA] case as it applies to [Juan]." The court's minute order from the November 4, 2020 arraignment hearing states, in pertinent part: "The Court does not have reason to know that [Juan] is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the BIA. Parents are to keep [DCFS], their Attorney [*sic*] and the Court aware of any new information relating to possible ICWA status. ICWA-020, the Parental Notification of Indian Status[,] is signed and filed. The Court does not have reason to know that ICWA applies as to Father."[5] Juan remained placed in foster care.

In the Jurisdiction/Disposition Report, filed with the juvenile court on November 12, 2020, DCFS stated, in pertinent part: On 09/23/2020, the Court deferred ICWA finding as to [Juan] for the appearance of [Father.] [¶] On 10/29/2020, [Mother] denied having any American-Indian ancestry. [¶] On

---

[5] Father did not sign his form ICWA-020. His counsel filled out the form for Father based on Father's representations during a telephone call with counsel.

5

10/29/2020, [Father] denied having any American-Indian ancestry."

In preparation of the Jurisdiction/Disposition Report, a DCFS dependency investigator interviewed Juan's maternal and paternal grandmothers. There is no indication in the record that the investigator asked either whether Juan may be an Indian child. Father told the investigator that he was raised by Juan's paternal great-grandparents, and they remained his support system. Father disclosed that Juan's paternal grandfather was deported to Mexico when Father was young; the record does not indicate if Father maintained a relationship with him.

In a Last Minute Information for the Court for the March 20, 2021 adjudication hearing, DCFS reported that Father and Mother lived together, and DCFS approved Juan's paternal grandmother to be present at Mother's visits with Juan. Father and Mother were present at the adjudication hearing. The juvenile court sustained the allegations in the dependency petition, as summarized above.

In a Last Minute Information for the Court for the May 13, 2021 disposition hearing, DCFS reported that it planned to replace Juan from a foster home to the home of his paternal grandmother. Father and Mother were present at the disposition hearing. The juvenile court declared Juan a dependent of the court, removed him from Father's and Mother's custody, and granted Father and Mother reunification services and monitored visitation.

The record does not indicate that any of Juan's extended family members was present at any of the juvenile court's hearings.

## DISCUSSION

## I.    Applicable Law

Under ICWA, an "Indian child" is an unmarried person under 18 years of age who is (1) a member of a federally recognized Indian tribe or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

DCFS and the juvenile court "have an affirmative and continuing duty to inquire whether a child" involved in dependency proceedings "is or may be an Indian child." (§ 224.2, subd. (a).) When DCFS detains a child and places that child in foster care, its duty to inquire "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Under ICWA, the term "extended family member" is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin or stepparent." (25 U.S.C. § 1903(2).)

"At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" (§ 224.2, subd. (c)) and order the parents to

7

complete form ICWA-020 (Parental Notification of Indian Status). (Cal. Rules of Court, rule 5.481(a)(2)(C).)

If the juvenile court or social worker "has reason to believe that an Indian child is involved in a proceeding," based on the initial inquiry described above, the court or social worker "shall make further inquiry regarding the possible Indian status of the child," including, but not limited to: (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying and contacting tribes; and (3) contacting tribes and others "that may reasonably be expected to have information regarding the child's membership status, or eligibility." (§ 224.2, subd. (e).) There is reason to believe a child is an Indian child if there is information suggesting that either the child or the parent is a member or may be eligible for membership in an Indian tribe. (§ 224.2, subd. (e)(1).) ICWA notice is required if DCFS or the juvenile court knows or has reason to know a child is an Indian child under any of the circumstances described in section 224.2, subdivision (d). (25 U.S.C. § 1912(a); § 224.3, subd. (a); Cal. Rules of Court, rule 5.481(b)(1).)

## II.    Analysis

As set forth above, DCFS came into contact with several of Juan's extended family members (the maternal and paternal grandmothers, a maternal aunt, a paternal cousin), but did not inquire whether the children may be Indian children, as required under section 224.2, subdivision (b). We must decide whether DCFS's failure to conduct this inquiry requires that we affirm the disposition order—which Father does not challenge on any other

8

ground—and remand the matter for DCFS to comply with its duty of inquiry.

Father argues a remand is required regardless of whether he can demonstrate he was prejudiced by the inadequate inquiry. (See *In re Y.W.* (2021) 70 Cal.App.5th 542, 556 ["The Department's failure to conduct an adequate inquiry into [the children's] possible Indian ancestry makes it impossible for [the parents] to demonstrate prejudice"].) DCFS argues the matter is subject to a harmless error analysis under California law, and a remand is required only if Father can demonstrate that it is reasonably probable that a result more favorable to him would have been reached in the absence of error. (See *People v. Watson* (1956) 46 Cal.2d 818, 836 [standard for determining whether an error under state law was prejudicial].)

We agree with DCFS that the matter is subject to a harmless error analysis, but in conducting this analysis, we apply the definition of prejudice set forth in *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*), rather than *Watson.* Under the *Benjamin M.* standard, for cases where the agency conducts an inadequate initial inquiry under section 224.2, we will remand the matter only "where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, at p. 744; *In re S.S.* (2022) 75 Cal.App.5th 575, 582-583; *In re Darian R.* (2022) 75 Cal.App.5th 502, 509-510.) "Under this approach, we require continued inquiry where the probability of obtaining meaningful information is reasonable in the context of ICWA." (*Benjamin M.*, at p. 744.)

Here, several paternal and maternal relatives were readily available to DCFS and had information that was likely to bear meaningfully upon whether Juan is an Indian child, i.e., information about Juan's ancestry. In its appellate briefing, DCFS notes that Father and Mother were in close contact with these paternal and maternal relatives, but this fact is not dispositive because the duty of inquiry lies with DCFS, not the parents. DCFS also argues there is nothing in the record indicating Father and Mother lacked information about their own ancestry. We will not speculate about what Father and Mother did or did not know about their ancestry. Suffice it to say that section 224.2, subdivision (b) requires the agency to inquire of extended family members regardless of whether the parents deny Indian ancestry; and parental disclaimers of Indian ancestry are insufficient to dispel Father's claim of prejudice here, where the record indicates there was readily obtainable information that was likely to bear meaningfully upon whether Juan is an Indian child. (*See In re A.C.* (2022) 75 Cal.App.5th 1009, 1015-1016; see also *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

Because we conclude DCFS's failure to inquire of the extended family members about Juan's potential Indian ancestry was prejudicial under the *Benjamin M.* standard, we remand the matter for the appropriate inquiry under section 224.2. We disagree with Father's position that conditional reversal of the disposition order is required here. Instead, we affirm the order with directions, as specified below.

## DISPOSITION

The disposition order is affirmed. The matter is remanded to the juvenile court, which is directed to order DCFS (1) to comply with the requirements of Welfare and Institutions Code

10

section 224.2 and California Rules of Court, rule 5.481(a) forthwith, and (2) to file a report with the juvenile court within 30 days of our remittitur containing the information required by California Rules of Court, rule 5.481(a)(5), including a description of all inquiries to extended family members.  The juvenile court shall conduct further proceedings in accordance with the ICWA, if applicable, and related California law.

NOT TO BE PUBLISHED

CHANEY, J.

I concur:

BENDIX, Acting P.J.

11

CRANDALL, J.,* Dissenting.

I would conclude that the Los Angeles County Department of Children and Family Services' (Department) admitted failure to interview extended family members under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) was harmless as described in my dissent in *In re A.C.* (2022) 75 Cal.App.5th 1009. To wit, father J.A. has not demonstrated that, had the Department inquired of extended family members, they would have provided a reason to believe Juan A. was an Indian child.

CRANDALL, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.